ALDERSON v. STEINBERG.

4-5683 137 S. W. 2d 925

Opinion delivered March 4, 1940.

*Silas W. Rogers*, for appellant.

*J. S. Brooks, Jr., Floyd Stein* and *Charles E. Wright*, for appellee.

GRIFFIN SMITH, C. J. Appellee is an attorney. Kissie Alderson and C. D. Garrett, Negroes, are brother and sister. As plaintiffs below they sought cancellation of two deeds, each of which conveyed to appellee a one-twelfth interest in minerals appurtenant to the lands described.

The complaint upon which the decree is predicated was filed in June, 1938.

As to Kissie Alderson it is alleged that the conveyance was without consideration; that it was not intended an interest in the minerals should be sold; that this appellant was induced to sign an instrument with her husband affecting, as she thought, different property, for which she and her husband were paid $20; that she

was informed and believed she was only releasing her dower interest, and that no other sum of money was paid her. She claims not to have read the instrument, relying upon representations made by appellee and by her brother-in-law, Archie Alderson. Archie was assisting appellee in procuring mineral deeds to other lands in which her husband was interested.

Garrett contends that at the time he executed the deed in question he was informed by appellee and Archie Alderson that the document was a contract, by the terms of which appellee was to become "their" legal representative. The leases, it is asserted, were worth $17.50 an acre in September, 1929, while the price received averaged about $1 an acre.

The deeds wherein Kissie Alderson granted in her own rights and in which she joined with her husband were dated September 30, 1929. Charlie Frazier joined in John Alderson's deed.[1] Garrett's deed is dated September 27, 1929. Each instrument was acknowledged the day it bears date and was immediately filed to be recorded.

Garrett contends appellee was brought to him by Archie Alderson; that while he (Garrett) was working for Lion Oil Company in the field appellee and Archie ". . . called to induce me to employ Mr. Steinberg as my lawyer in connection with 'an interest out there.'" Witness went to Steinberg's office and signed what he thought was a contract for legal services. The deed recites: "We, John Alderson and Kizzie Alderson, his wife, and Charlie Frazier, for and in consideration of the sum of one dollar to us cash in hand, and legal services rendered by Harry C. Steinberg," etc.

In the typewritten part of this document[2] Kissie's name is spelled "Kizzie," and it so appears in the acknowledgment. In each deed executed by Kissie the name as it appears in signature is "Kizzie."

Counsel for appellants directs attention to the deed of Alderson and his wife and Frazier, and says: "Un-

---

[1] "Deeds," and "leases" are terms used synonymously in the record.

[2] A regular printed deed or lease form was used.

doubtedly alterations were made [in the signature] of the deed in question." Contention is that the two "z's" were underscored, in consequence of which they resemble the letter "s."

Appellee's explanation is that the two deeds had been prepared prior to their presentation to Kissie and the name had been spelled "Kizzie." Appellee and I. W. Stennett called on Kissie September 30, 1929. She wrote "Kissie Franceis Alderson." Appellee called Kissie's attention to the fact that the prepared form carried the name as "Kizzie." Appellee told appellant to make a "z" out of each "s." His testimony is: "She took the pen and put stems on each 's.'"

More than a dozen witnesses testified. In point of numbers, witnesses called by appellants exceeded those used by appellee.

Issues presented are factual. The complaint was dismissed for want of equity. Appellants' counsel summarizes:

"To say the least, the evidence on both sides is sufficient to reflect doubt, confusion, and irregularities with regard to all the transactions between appellants and appellee."

The requisite of evidence necessary to avoid a deed or the obligations of a contract in writing[3] must transcend a preponderance. It must be "clear and convincing"; or, as otherwise expressed, "clear and satisfactory." 20 American Jurisprudence 1103, §§ 1252 and 1253; *Morris* v. *Cobb,* 147 Ark. 184, 227 S. W. 23; *Burns* v. *Fielder,* 197 Ark. 85, 90, 122 S. W. 2d 160; *Bevens* v. *Brown,* 196 Ark. 1177, 120 S. W. 2d, 574.

By signing a document which may be placed of record, the person so acting says to the world that he or she (or, if a corporation, it) did, in fact, execute the instrument. The signature imports something more than a mere presumption, once its authenticity is established. True, the means by which the signature was procured may form the basis of judicial inquiry, but the explanation that fraud was perpetrated by or in behalf of the

[3] The references are to acknowledged instruments.

procuring party, while if testified to is evidential, must be supported by circumstances or other evidence which satisfies the court that fraud was the motivating influence.

In the instant case almost eight years elapsed before the deeds were questioned. Under appellants' summary of the evidence its effect was to reflect doubt, create confusion, and show irregularities. Irregularities may be (and in the chancellor's opinion were) explained away. Certainly the testimony was in confusion; that is, it was contradictory. But the mere creation of doubt in consequence of contradictory testimony is not enough to justify cancellation of a deed.

The decree is affirmed.